

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WALTER L. HILL B58710
    Petitioner,

    vs.

JAY MERCHANT
    Respondant.

Case No. 08 C 2404

Samuel Der-Yeshiayan,
    Presiding Honorable Judge

Date: 7-21-08

Petitioners Response To Respondants Answer

FILED
Aug 11 2008
AUG 1 1 2008 MB
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## POINT AND AUTHORITIES

1. Walter Hill Was Not Proven Guilty Beyond a Reasonable Doubt of Residential Burglary.

2. Unexplained Possession of Stolen Property" and "Close Proximity to a Crime" is not sufficient for guilt Beyond a reasonable Doubt for a Burglary Conviction.

3. The State of Illinois in collaboration with Circuit Court of Cook County and the Illinois Appeals Court Did Violate Walter Hills' XIV Amend U.S. Const., and ILL. Const., 1970 Art 1 §2 Due Process Rights

U.S. Const., amed. XIV
ILL. Const, 1970, Art. 1, §2

i.

In Re Winship, 397 U.S. 358 (1970)

People vs. Weinstein, 35 Ill. 2d 467, 220 N. E. 2d (1896)

720 ILCS 5/19-3(a) (2005)

County Court vs. Allen, 442 U.S. 140, 167, 60 L. Ed. 2d 777,
798, 99 S. Ct. 2213, 2229-30 (1979)

People vs. Housby, 84 Ill. 2d 415, 420 N.E. 2d 151 (1981)

People vs. Natal, 368 Ill. App. 3d 262, 2006 Ill. App LEXIS
1053, *12 (No. 1-05-1613 November 20, 2006)

Federal Habeas Corpus   Title 28 U.S. C. Section 2254

# NATURE OF THE CASE

Walter Hill was convicted of residential burglary after a bench trial and was sentenced to 14 years in prison.

This is a petitioner in pursuant to a Federal Habeas Corpus Title 28 U.S.C. Section 2254 after exhaustion of all state remedies all the way to the Illinois Supreme Court.

# ISSUE PRESENTED FOR REVIEW

1.) Whether Walter Hill Was Proven Guilty Beyond a Reasonable Doubt of Residential Burglary Where the Evidence of his Presence Near the Residence Sometime Before the Burglary, and his Unexplained Possession of a Few of the Stolen Items Sometime After the Burglary, Did Not Prove the Mr. Hill was the One Who Entered the Residence in Question and Stole the Missing Items.

2.) If the Illinois Circuit, Appeals and Supreme Courts were erroneous to find Mr. Hill guilty and affirm that decision, of guilt based on "Unexplained Possession" of "Stolen Property" and "Close Proximity to the Crime" stating that that was sufficient for a finding of guilt; when the Illinois Appeals Court recently decided 4 months prior to the decision in this case that "Unexplained Possession" and "Close Proximity" was not sufficient for a finding of guilt beyond a reasonable doubt.

3.) Whether on not the State violated Mr. Hill's XIV Amend. U.S. Const., Due Process Rights.

# JURISDICTION

Walter Hill files this petition for Writ of Federal Habeas Corpus pursuant to Title 28 U.S.C. Section 2254 after exhausting remedies to the highest Court in the State of Illinois. Jurisdiction therefore lies in this Court.

# STATEMENT OF FACTS

Walter Hill was charged with a single Count of Residential Burglary (Case No 04CY 41169). On July 26, 2005, a bench trial was conducted, and the trial Judge inferred, Mr. Hill's guilt based solely on "unexplained possession of stolen property" and "close proximity to a crime", stating that that was sufficient evidence for a finding of guilt beyond a reasonable doubt for burglary.

Notice of Appeal was filed April 11, 2006 (Case No. 1-06-0928)
Appeal denied August 17, 2007
Petition for Rehearing denied October 17, 2007

Petition for Appeal to Illinois Supreme Court (Case No. 105686
denied January 30, 2008
Mandate issued March 6, 2008

4.

# ARGUMENT

Now comes the Plaintiff-Petitioner, Walter L. Hill Pro se, who states that this Honorable Court should grant his Writ of Habeas Corpus 28 U.S.C. Section 2254 pursuant to the fact that the State of Illinois did violate plaintiffs U.S. Const., amend. XIV Due Process Rights, and his Ill. Const., 1970, Art. I, §2 Due Process Rights based on the fact that the state never met its burden of proof proving every fact necessary to constitute the crime with which the plaintiff was charged and convicted for. The trial court erred in finding plaintiff guilty of a Residential Burglary beyond a reasonable doubt based on "unexplained possession of recently stolen property" and "close proximity to the crime" without any corroborating evidence that plaintiff was the person who actually entered the burglared residence and stole the missing items.

Walter Hill, the plaintiff, was not proven guilty beyond a reasonable doubt of residential burglary where the evidence of his presence near the residence sometime before the burglary, and his possession of a few of the stolen items sometime after the burglary, did not prove Mr. Hill was the perpatrator of that crime. In criminal prosecutions, the due process clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necesary to constitute the crime with which he is charged, U.S. Const., amend. XIV Ill. Const., 1970 Art. I §2' In Re Winship, 397 U.S. 358, 361-64 (1970). The State has the burden of proving beyond a reasonable doubt all of the material and essential facts constituting the crime charged.

People v. Weinstein, 35 Ill. 2d 467, 220 N.E. 2d 432 (1996).
This burden never shifts to the accused. In this case,
in order to prove the offense of residential burglary the
State was required to prove that Walter Hill, the
plaintiff, knowingly and without authority entered the
Bily's house with the intent to commit a theft therein,
720 ILCS 5/19-3(a)(2004). However, the State never
met it's burden, that evidence was never produced nor
proven by the State before trial, at trial, or post
trial. The State charged plaintiff specifically with a
residential burglary despite having no evidence to prove
that he was the individual who broke into the Bily's
home. The trial court inferred Mr. Hill's guilt beyond a
reasonable doubt based solely on Mr. Hill's presence in "close
proximity" to the crime sometime before the burglary, and
his recent, "unexplained possession" of some of the proceeds
sometime after the burglary. However, this circumstantial
evidence was/is insufficient proof that Mr. Hill was/is
the person who entered the Bily's home and stole their
possessions. County Court 442 U.S. 140, 167, 60 L.Ed.2d 777,
798, 99 S. Ct. 2213, 2227-30; but, where the permissive
inference stands unsupported by corroborating circumstances,
the leap from the proved fact to the presumed element must
satisfy the higher standard - proof beyond a reasonable
doubt - for there is nothing else on which to rest the
fact finder's verdict of guilt.

Aside from Mr. Hill's presence near the crime sometime
before the burglary actually occurred, the only other evidence
the State presented was that Mr. Hill sold two of the stolen

-6-

goods to a pawn shop sometime after the burglary. However, this is insufficient to prove Mr. Hill guilty of residential burglary.

A defendant's possession of recently stolen property, standing alone, is not sufficient evidence to sustain a burglary conviction. People v. Natal, 368 Ill. App. 3d 262, 2006 Ill. App. LEXIS 1053, *12 (No. 1-05-1643 November 28, 2006) citing People v. Housby, 84 Ill. 2d 415, 420 N.E. 2d 151 (1981). The Housby Court concluded that a fact finder could presume guilt based on exclusive possession of recently stolen property only if three requirements were met: (1) there was a rational connection between the defendant's recent possession of stolen property and his participation in the burglary, (2) the defendant's guilt of the burglary "more likely than not" flowed from his recent, unexplained and exclusive possession of the proceeds" and (3) there was corroborating evidence of the defendant's guilt. The State failed to meet the three requirements set forth in Housby.

First, there was/is no rational connection between Mr. Hill's possession of the proceeds and the burglary. No eyewitness ever saw Mr. Hill going into, inside or coming out of the residence. There was no evidence that Mr. Hill had ever been inside the Bily's house such as fingerprints, hairs, D.N.A, forensics or any other items left behind.

Second, there was/is no evidence that Mr. Hill's guilt "more likely than not" flowed from his possession of the proceeds. The State never put on any evidence to support that at trial.

Third, there was/is no corroborating evidence of Mr. Hill's guilt. Again, he was never seen going into, coming out of,

or inside the Bily's home. Mrs. Bily testified at trial that she did not see Mr. Hill (the petitioner) enter or in her home, or holding anything in his hands such as tools or duffle bag nor did she see Mr. Hill with gloves on. In fact, when Mr. Hill was picked up by the NorthLake Police Department on November 3, 2004 and not October 30, 2004, for an entirely unrelated issue, he was not in possession of any burglary tools, gloves or weapons, nor any of the other missing proceeds such as the video games and accessories, or any of the several pieces of jewelry.

Wherefore, Petitioner states that he maintains his plea of not guilty, and that the prosecution never met it's burden of proof that petitioner was the individual who entered the residence and stole the missing items. This burden never shifts to the accused but rests solely on the prosecution.

The Circuit Court is erroneous in its decision of guilty beyond a reasonable doubt based solely on "Unexplained Possession of Recently Stolen Property in Close proximity to the crime", when by law this is insufficient for a burglary conviction (U.S. Supreme Court County v. Allen, 442 US 140, 60 L.Ed 2d 777, 99 S.Ct. 2213 (1979). In accordance the the U.S. Supreme ruling in the County Court, the Illinois Supreme Court in Housby, Ill, 420 N.E. 2d 151 (1981) held that "exclusive and unexplained possession of recently stolen property is not sufficient, standing alone or without corroborating evidence of guilt, for conviction of burglary, even where such inference is regarded as permissive, and does violate Due Process.

The Illinois Appellate Court, in accordance with the

County Court (U.S. Supreme) and the Housby Court (Ill. Supreme),
in the recent decision in People v. Natal, 368 Ill. App. 3d
262 (2006), the Ill. Appellate Court held that regardless
of the nature of the trier of fact, whether judge or jury,
it was improper to presume that a defendant committed burglary
merely because he was in possession of stolen property taken
from a burglary. The Illinois Appellate Court was erroneous
in affirming Petitioners Conviction and Sentence for burglary
based on Unexplained Possession of Stolen Property, in
Close Proximity to the Crime where there is no corroborating
evidence of guilt and basis stands alone by itself, when
4 months prior this same court overturned Natal based
on Unexplained Possession of Stolen Property is insufficient
for a finding of guilt and a conviction of burglary. The
State in Petitioner's case, never produced evidence at trial
that petitioner's unexplained possession of stolen property
more than likely flowed from his participation in the
burglary.

      Petitioner thus states that his Due Process
Rights (U.S. XIV Amend. and ILL. Const. 1970 Art. 1 §2)
were violated, and should this Honorable Court grant
Petitioner's Writ of Habeas Corpus pursuant to 28 U.S.C. 2254,
he asks this court to also negate the Circuit Courts
order requiring Mr. Hill to Submit blood specimen for
genetic analysis.

## In Conclusion

The State is asking this Honorable Court to continue to disregard the U.S. Supreme Ruling in County Court; the Illinois Supreme Court Ruling in the Housby Court; and again the Illinois Appellate Ruling in the 2006 Natal Court where they all state that Unexplained Possession of Stolen Property is insufficient for a burglary Conviction. The trial Court specifically uses this language in the decision of petitioners reasoning to find him guilty for burglary. This is the sole reason of the trial judge and so merely inferred petitioners guilt based only on that without any corroborating evidence or any showing how or stating how the petitioners proceeds were obtain by being most likely than not a participant in the burglary. This is erroneous by the Circuit and Appellate Courts.

Unlike Natal, Petitioner was not seen at the scene of any burglary. Petitioner was arrested on November 3, 2005 for a completely different matter which I was arrested for (see exhibits 3A thru 3G). When Petitioner was picked up, the issue that he was picked up for was unrelated to this case so he was witnessed at any crime or committing any crime, when in fact the witness, Mrs. Bily, stated at trial she did not witness the Petitioner in her home or going into her home nor did she witness petitioner with anything on his person outside of the clothes he had on. Petitioner was not shown at trial, by the State, to have had any finger prints, forensic evidence, D.N.A on any form of evidence left behind by petitioner to prove in fact that he was the person to burglarize the property.

There is no corroborating evidence at all nor is there any evidence to support the States theory that Petitioners proceeds more likely than not flowed from the burglary so the trial courts sole basis for guilty finding is solely unexplained possession of stolen property which is uncorroborated and unsupported with any evidence and conviction should be reversed.

Respectfully Submitted,

Walter L. Hall B58710
Pro se

Box 999 Pinckneyville, Il
62274-3910

11.

# Exhibit Content Page

1A --- Circuit Courts Finding of Guilty Beyond A Reasonable Doubt Based Solely and Specifically on "Unexplained Possession of Stolen Property" in "Close Proximity to the Crime" and Word Specifically As Such (Case No. 04 CY 41169)

2A thru 2H --- Natal, 368 Ill App. 3d 262 (2006), where that Court held that unexplained possession of recently Stolen Property is insufficient for a Burglary Conviction and the Trial Courts Guilty Verdict was reversed by the Illinois Appeals Court Nov. 20, 2006, and explained how this Courts decision in the present case was in Contradiction and erroneous to its own Decision and in contradiction also to the Ill. Supreme Housby Court and the U.S. Supreme County Court

3A thru 3G --- Showing that Petitioner was not arrested for this Court, and the case (No 04-23811) which I was arrested for was on Nov. 3, 2004 and not Oct 30, 2004. I shouldn't have been tried for this case at all.

1            I find that the testimony of the two
2  civilian witnesses is credible in its identification
3  of the defendant as the person, number one, who was
4  seen at the scene of the residential burglary and,
5  number two, as the person who in fact did sell the
6  items within an hour or two hours of the residential
7  burglary.  So the -- I have sufficient evidence to
8  support the identification of the defendant.

9            Further, I find that the recent,
10  unexplained possession of stolen property, while
11  alone by itself would not be sufficient to support
12  residential burglary, the fact that that recent,
13  unexplained possession is -- has been proven beyond
14  a reasonable doubt and been corroborated by the
15  credible identification of the defendant as the
16  person who was at the scene of the residential
17  burglary.  I find that with all that there is
18  sufficient evidence for a finding of guilty as to
19  residential burglary.

20            There will be a finding of guilty and
21  a judgment on the finding.

22            We'll need a PSI.  What date do you
23  want to come back?

24            MR. ROSENTHAL:  How's August 25th?

Service: **Get by LEXSEE®**
Citation: **368 Ill.app.3d 262**

*368 Ill. App. 3d 262, \*; 858 N.E.2d 923;*
*2006 Ill. App. LEXIS 1053, \*\*; 306 Ill. Dec. 865, \*\*\**

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM NATAL, a/k/a Samuel Natel, Defendant-Appellant.

No. 1-05-1643

APPELLATE COURT OF ILLINOIS, FIRST DISTRICT, FIRST DIVISION

368 Ill. App. 3d 262; 858 N.E.2d 923; 2006 Ill. App. LEXIS 1053; 306 Ill. Dec. 865

November 20, 2006, Opinion Filed

**SUBSEQUENT HISTORY:** [\*\*1] Released for Publication December 8, 2006.

**PRIOR HISTORY:** Appeal from the Circuit Court of Cook County. No. 03 CR 11974. Honorable Eddie A. Stephens, Judge Presiding. People v. Natal, 2006 Ill. App. LEXIS 872 (2006)

**DISPOSITION:** Reversed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** The Circuit Court of Cook County (Illinois) convicted defendant of residential burglary, 720 Ill. Comp. Stat. Ann. 5/19-3(a) (2002). Defendant was also ordered to submit blood specimens to the Illinois State Police for genetic analysis pursuant to 730 Ill. Comp. Stat. Ann. 5/5-4-3 (2002). Defendant appealed the judgment.

**OVERVIEW:** The victim testified that after discovering that items had been stolen from his apartment, he saw defendant outside of his property standing on the sidewalk. Defendant was holding and looking into two pillowcases that had been removed from the victim's bed. When the victim confronted defendant, defendant stated that someone had dropped the items and ran away. On appeal, defendant contended that the State failed to prove him guilty beyond a reasonable doubt. To obtain a conviction for residential burglary, the State had to prove that defendant knowingly entered the dwelling of another without authority and with an intent to commit a theft or felony therein, 720 Ill. Comp. Stat. Ann. 5/19-3(a) (2002). The appellate court held that the trial judge inferred the burglary merely from defendant's possession of the stolen property. There was no corroborating evidence of defendant's guilt. The appellate court held that regardless of the nature of the trier of fact, whether judge or jury, it was improper to presume that a defendant committed burglary merely because he was in possession of stolen property taken from a burglary. Thus, the conviction had to be reversed.

**OUTCOME:** The judgment was reversed.

**CORE TERMS:** burglary, apartment, guilt, unexplained, stolen property, exclusive possession, pillowcase, beyond a reasonable doubt, reasonable doubt, sidewalk, residential burglary, inside, corroborating evidence, apartment building, standing alone, burglar, glove, door, blood, fingerprint, recovered, stolen, patio, case law, deadbolt, presume, pocket, player, theft, failed to prove

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Criminal Law & Procedure > Appeals > Standards of Review > General Overview 🔖
Evidence > Procedural Considerations > Weight & Sufficiency 🔖

*HN1* ⚖ When a defendant challenges the sufficiency of the evidence, the court must determine whether a rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the elements of the offense proven beyond a reasonable doubt. This standard applies whether the evidence was direct or circumstantial. A criminal conviction will not be reversed based on insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to the defendant's guilt. More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Property Crimes > Burglary & Criminal Trespass > Burglary > Elements 🔖

*HN2* ⚖ To obtain a conviction for residential burglary, the State must prove that a defendant knowingly entered the dwelling of another without authority and with an intent to commit a theft or felony therein, 720 Ill. Comp. Stat. Ann. 5/19-3(a) (2002). A defendant's possession of recently stolen property, standing alone, is not sufficient evidence to sustain a burglary conviction. More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Property Crimes > Burglary & Criminal Trespass > Burglary > Elements 🔖

*HN3* ⚖ A jury can presume guilt based on exclusive possession of recently stolen property only if three requirements are met: (1) there was a rational connection between the defendant's recent possession of stolen property and his participation in the burglary, (2) the defendant's guilt of burglary more likely than not flowed from his recent, unexplained, and exclusive possession of the proceeds, and (3) there was corroborating evidence of the defendant's guilt. More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Property Crimes > Burglary & Criminal Trespass > Burglary > Elements 🔖

*HN4* ⚖ Regardless of the nature of the trier of fact, whether judge or jury, it is improper to presume that a defendant committed burglary merely because he was in possession of stolen property taken from a burglary. More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > General Overview 🔖

*HN5* ⚖ Under 730 Ill. Comp. Stat. Ann. 5/5-4-3(a-5) (2002), a person who is convicted of any offense classified as a felony under Illinois law is required to submit blood specimens to the Illinois Department of State Police for genetic analysis. More Like This Headnote

**COUNSEL:** For APPELLANT: OFFICE OF THE STATE APPELLATE DEFENDER, of Chicago, IL (Rebecca L. Myhr) of counsel.

For APPELLEE: STATE'S ATTORNEY, COUNTY OF COOK, of Chicago, IL (James E. Fitzgerald, Samuel Shim and Brian O. Lee) of counsel.

**JUDGES:** Honorable Eddie A. Stephens, Judge Presiding. JUSTICE ROBERT E. GORDON delivered the opinion of the court. CAHILL and J. GORDON, JJ., concur.

**OPINION BY:** ROBERT E. GORDON

**OPINION: [\*263]  [\*\*\*866] MODIFIED ORDER UPON DENIAL OF PETITION FOR**

### REHEARING

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Following a bench trial, defendant William Natal was convicted of residential burglary and sentenced to 10 years' imprisonment as a Class X offender based upon his criminal history. He was also ordered to submit blood specimens to the Illinois State Police for genetic analysis pursuant to section 5-4-3 of the Unified Code of Corrections (Code). 730 ILCS 5/5-4-3 (West 2002).

On appeal, defendant contends that the State failed to prove him guilty beyond [**2] a reasonable doubt when the only evidence against him was his possession of some of the proceeds from the burglary. Defendant also contends that the compulsory extraction of his blood and perpetual storing of his DNA profile pursuant to section 5-4-3 of the Code violates his fourth amendment right to be free from unreasonable searches and seizures. We reverse.

[***867] At trial, Joseph Fuentes testified that at about 9 a.m. on May 17, 2003, he and his girlfriend, Consuelo Canaday, left their second-floor [*264] apartment, locking the lock on the doorknob, but not the deadbolt. When they returned home at noon, they observed a hammer and a screwdriver on the doormat in front of their apartment door, saw that the door had been damaged, and then found that the deadbolt on the door had been locked. Upon entering the apartment, Fuentes saw that their home had been ransacked, with the mattress flipped over, drawers and cabinets open in every room, and their clothes removed from the closet and dresser and thrown on the floor. In the living room, their VCR and DVD player had been disconnected from the television and moved to the dining room table, and their patio door was open. Fuentes testified that the [**3] patio has a stairway leading to the ground, and someone could ascend the stairway and enter the apartment. There is also a rear door to the building that leads to a hallway that goes to Fuentes' apartment door.

Fuentes further testified that he went outside on the patio and did not see anyone in the alley, but then saw defendant outside of his property standing on the sidewalk on Milwaukee Avenue about 20 feet away from the building. Defendant was holding and looking into two pillowcases that had been removed from Fuentes' bed. Fuentes told Canaday that the burglar was downstairs and to call the police. He went downstairs, grabbed a pipe that was in the stairwell, exited the building and confronted defendant on the sidewalk. Fuentes asked defendant why he was going through his property, and defendant replied "[i]t wasn't me. The guy just ran away," and pointed over Fuentes' shoulder. Fuentes told defendant not to go anywhere and that the police were on their way. Defendant left the pillowcases on the sidewalk near the apartment building and began walking backwards. He then placed his hand inside his jacket, said that he had a gun and threatened to shoot Fuentes, but Fuentes did [**4] not believe him because he then removed his hand from his jacket. The arresting police officer interviewed Fuentes and testified Fuentes never told him that he was threatened with a gun.

Fuentes testified that defendant continued walking backwards away from the apartment, and Fuentes slowly followed him. Fuentes then saw defendant remove a black item from his back pocket and drop it behind a dresser that was on display on the sidewalk in front of a furniture store. Minutes later, police arrived and arrested defendant. When police searched defendant, Fuentes saw them remove from his back pocket a green padlock with a ladybug sticker on it that belonged to Canaday and had been in their apartment. He also saw police recover the item defendant discarded behind the dresser, and recognized it as his black glove. Inside the glove were quarters and a gold necklace. Fuentes testified that he had never seen defendant [*265] before the day of the burglary and never gave him permission to enter his apartment or remove any items from therein.

Chicago police officer James Wodnicki testified that he responded to a call at Fuentes'

apartment and when he arrived, he saw defendant arguing with Fuentes about **[\*\*5]** 200 feet south of the apartment building. After speaking with Fuentes, Officer Wodnicki arrested defendant, and during a custodial search, he recovered a green padlock and a watch from his back pocket. He also recovered from the scene a glove containing loose change. The officer observed other property items on the sidewalk near defendant and saw pillowcases on the ground in front of a dollar **[\*\*\*868]** store, which was near the apartment building.

In support of his motion for a directed finding, defense counsel argued that the State had not proven the elements of residential burglary and that the court could not presume that defendant committed the burglary merely because he was in possession of items that were allegedly taken during the offense. The trial court found that, based on all of the evidence that had been presented, defendant's possession of the property was unexplained. In denying defendant's motion, the court stated that "defendant's possession of these items proximate to the victim's house all militate toward -- in this court's opinion at this stage of the proceedings -- the conclusion that the State has shown a prima facie case."

Defendant presented testimony from Chicago police **[\*\*6]** evidence technician Roy Fondren, who testified that on the afternoon of May 17, 2003, he recovered eight latent fingerprint lifts from items inside Fuentes' apartment that were believed to have been handled by the burglar. Officer Fondren testified that he did not make any comparisons of these prints, but submitted them for analysis. The parties then stipulated that certified fingerprint examiners Leo Cummings and Willie Harris examined those fingerprints and found that they did not match the fingerprints of defendant.

Defendant testified that on the date in question, he was walking down the sidewalk and noticed a gold chain, a locket, money and a glove on the ground. He picked up these items and placed them in his pocket, and then began looking inside some bags (pillowcases) that were on the ground. Defendant testified that the sidewalk was busy with people at the time. Fuentes then appeared holding a pipe, startled defendant, and said that the items belonged to him. Defendant testified that he began walking backwards because Fuentes threatened him with the pipe. He also testified that the watch the police recovered from him actually belonged to him. Defendant denied that he ever **[\*\*7]** entered Fuentes' apartment, that he threatened Fuentes, or that he told him that someone who ran away had taken the property. **[\*266]** Defendant also acknowledged that he was convicted of theft and possession of a controlled substance in 2001, and attempted residential burglary in 1998.

In closing arguments, defense counsel asserted that defendant had provided a reasonable explanation for his possession of Fuentes' property. Counsel further argued that Fuentes' testimony was impeached, which made his credibility questionable. Counsel maintained that the State merely proved that defendant was in possession of some proceeds from the alleged burglary and that it failed to prove that he ever entered the apartment building.

The court stated that it had heard all of the evidence and observed the demeanor of the witnesses who testified. It then detailed the testimony of Fuentes and defendant. The court noted that the defense's theory was that, if defendant had stolen the property, he would have left the area, but the court found that there was no explanation as to why defendant would pick up property that did not belong to him and not leave the area. The court also noted that the State had argued **[\*\*8]** that defendant's unexplained possession of the property was sufficient to support a finding of guilt. The court found that defendant's testimony was not credible and stated that the court did not have to accept his explanation, especially in light of his criminal background. Even though the testimony of both defendant and Fuentes had **[\*\*\*869]** been impeached, the court was not going to disregard Fuentes' entire testimony.

The trial court then stated that there was other evidence which was "circumstantial in terms of the residential burglary." It noted that defendant allegedly dropped a glove behind a piece

of furniture on the street, which defendant denied. The court stated that the most powerful evidence was defendant's unexplained possession of the property, and that it was "a close case," but found that the case law supported a conviction and found defendant guilty of residential burglary. The court noted that the State presented case law which held that recent unexplained exclusive possession of stolen property raises an inference of guilt, which, according to those cases, was sufficient to support a guilty finding.

The case law that the trial court relied on was *People v. Curtis*, 116 Ill. App. 2d 298, 254 N.E.2d 87 (1969). **[**9]** In the *Curtis* case, the trial court gave a jury instruction which was found proper and which stated:

> "'The Court instructs the jury that the exclusive possession, shortly after the commission of burglary, of stolen property, the proceeds of the crime, if unexplained, may of itself raise an inference of guilt of the person having such possession, sufficient to authorize a conviction if the jury believes that such possession has **[*267]** been established beyond a reasonable doubt and in the absence of any other evidence of facts or circumstances in evidence which leave in the mind of the jury a reasonable doubt as to the guilt of such person.'" *Curtis,* 116 Ill. App. 2d at 300-01.

In the case at bar, following the court's ruling, defendant continued to proclaim his innocence and stated that his conviction was not fair. After repeatedly advising him not to speak, the court told defendant "you were found guilty by me not because of your background, but because of the law and the facts that I heard."

A subsequent hearing on defendant's posttrial motion did not show that defendant was ever inside the apartment building, that he was merely looking into a bag, and that **[**10]** he provided a reasonable explanation for doing so. The trial court acknowledged that there was no direct evidence that defendant was inside Fuentes' home, but stated that circumstantial evidence existed, which was to be given the same weight as direct evidence. The court further noted that a defendant may provide an explanation for that possession, but that the trier of fact may use its common sense experience and either accept or reject that explanation.

The trial court then summarized the evidence that was presented, noting that Fuentes initially observed defendant 20 feet away from his apartment, looking into pillowcases that had been taken from his bed while he was away from his home between 9 a.m. and noon. The court also noted Fuentes' testimony that defendant denied taking the property and claimed that a man who had fled had stolen it, and that Fuentes saw defendant discard an item behind a piece of furniture which was later recovered and found to be a glove containing quarters and jewelry. It further noted that defendant testified that the sidewalk was busy with people at the time, but that he was the only person who picked up items from the ground and looked inside the pillowcases. **[**11]**

The trial court stated that it "heard all of the evidence and made certain determinations," one of which was that the DVD player and VCR would not have been left inside the apartment if the offender had had time to remove those items. The court stated that this evidence raised an inference that the burglar made a hasty exit, which it considered together with the **[***870]** fact that defendant was standing nearby with a pillowcase containing proceeds from the burglary. The court again noted that it found defendant's testimony incredible and that his explanation did not make any sense, and denied his posttrial motion.

On appeal, defendant first contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to show breaking and entering with the intent to commit a theft therein. Defendant **[*268]** asserts that the trial court presumed that he committed the burglary because he was in possession of some of the items that were stolen from the apartment, but that mere possession of stolen goods, standing alone, is insufficient to establish guilt of burglary. Defendant further argues that there was no evidence to prove that he ever entered the residence.

*HN1* When a defendant challenges **[**12]** the sufficiency of the evidence, this court must determine whether a rational trier of fact, after viewing the evidence in the light most favorable to the State, could have found the elements of the offense proven beyond a reasonable doubt. *People v. Maggette, 195 Ill. 2d 336, 353, 747 N.E.2d 339, 254 Ill. Dec. 299 (2001).* This standard applies whether the evidence was direct or circumstantial. A criminal conviction will not be reversed based on insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to the defendant's guilt. *Maggette, 195 Ill. 2d at 353.*

*HN2* To obtain a conviction for residential burglary, the State must prove that defendant knowingly entered the dwelling of another without authority and with an intent to commit a theft or felony therein. *720 ILCS 5/19-3(a)* (West 2002); *Maggette, 195 Ill. 2d at 353.* Defendant's possession of recently stolen property, standing alone, is not sufficient evidence to sustain a burglary conviction. *People v. Housby, 84 Ill. 2d 415, 423, 420 N.E.2d 151, 50 Ill. Dec. 834 (1981).* *But the Court did not Hol and instead after H.'s Ruling in rental the Appellate Court upheld his conviction this* In *People v. Housby,* the Illinois Supreme Court reviewed the constitutionality **[**13]** of *same grounds* the presumption that an individual in possession of recently stolen property is the one who committed the burglary. The *Housby* court concluded that *HN3* a jury could presume guilt based on exclusive possession of recently stolen property *only if three requirements were met:* (1) there was a rational connection between the defendant's recent possession of stolen property and his participation in the burglary; (2) the defendant's guilt of the burglary "more likely than not" flowed from his recent, unexplained and exclusive possession of the proceeds; and (3) there was corroborating evidence of the defendant's guilt. *Housby, 84 Ill. 2d at 424.* The court in *Housby* stated: *The State did not meet any of the Housby three requirements yet still any conviction was upheld by the Appellate and Supreme Courts of Illinois.*

"To the extent that past Illinois decisions have held that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence of guilt, for conviction of burglary, those decisions, in light of the United States Supreme Court holding in *County Court [v. Allen, 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979)]*, can no longer be applied, even where the inference is regarded as permissive. The presumption standing **[**14]** alone does not prove burglary beyond a reasonable doubt. The person in exclusive possession may be the burglar, to be sure, but he might also be a receiver of stolen property, guilty of **[*269]** theft but not burglary, an innocent purchaser without knowledge that the item is stolen, or even an innocent victim of **[***871]** circumstances." *Housby, 84 Ill. 2d at 423.*

Without deciding that the three-part *Housby* test applies in the case at bar, we note that the test is not met in this instance. Although the facts and surrounding circumstances in this case could support a finding by the trier of fact that there was a rational connection between defendant's recent possession of stolen property and his participation in the burglary based

on evidence that defendant was found with some items stolen in the burglary 20 feet from the apartment building where Fuentes resided, the evidence does not support a finding that defendant's guilt of the burglary "more likely than not" flowed from his recent, unexplained and exclusive possession of the proceeds. Nor is there support for a finding that there was corroborating evidence of defendant's guilt.

In its ruling the trial court stated:

> "The [**15] State has posited that the defendant's possession of these items is unexplained; and under *People v. Curtis*, unexplained possession can be sufficient for proof beyond a reasonable doubt; and, therefore, support a finding of guilt. *** And the Court is asked to determine whether this is proof beyond a reasonable doubt. The most powerful evidence here obviously is the possession of the property of the defendant without any explanation. To this Court, it is unexplained possession. *I think it is a close case. But it is unexplained possession. The case law supports a conviction.*" (Emphasis added.)

The trial court's decision shows that the judge inferred the burglary merely from the defendant's possession of the stolen property and ignored the admonition of *Housby* that unexplained possession, standing alone, is not sufficient to convict. In its decision the trial court did not discuss the three requirements set forth in *Housby* for a court to presume guilt based on the exclusive possession of recently stolen property. *Just as the Circuit (Trial) Court inferred my guilt solely from my possession of stolen property.* Other than defendant's possession of the property, there was no corroborating evidence of defendant's guilt. In fact, quite to the contrary, fingerprint [**16] samples that were taken at the scene did not match defendant's. This is evidence that supports the position that defendant was not the burglar. Although the trial court found incredible defendant's testimony that someone else had merely dropped the items on the street, or left them in a pillowcase, that testimony and the fact that defendant had possession of items taken in the burglary cannot support a guilty verdict of burglary beyond a reasonable doubt without some corroborating evidence. *I did not testify at trial! The State has the burden of proof, not the defendant.*

*Same in my case → defendant ← I do/have findings & evidence to find these findings & find!*

[*270] Fuentes testified that he had not locked the deadbolt of his front door, but when he returned home, it was locked. In addition, his VCR and DVD player had been disconnected from his television and moved to the dining room table, near the open patio door. Fuentes also testified that there were stairs on the patio that led down to the ground. From this evidence, the trial court concluded that the burglar made a hasty exit from the apartment, quite possibly as he heard Fuentes unlocking the deadbolt, and would have taken the VCR and DVD player if he had had time to grab those items on his way out. The court explicitly stated that it considered this evidence of the hasty exit together with the fact [**17] that defendant was found immediately thereafter standing nearby with a pillowcase containing proceeds from the burglary.

However, when that evidence is considered with the evidence that the fingerprints did not match those of defendant, there is no corroborating evidence to support a finding that defendant's possession [***872] of the stolen property was sufficient to convict defendant beyond a reasonable doubt. It is not incredible that the property left behind, which was of minimal value, was left by someone else who burglarized Fuentes' apartment.

The State contends that our supreme court in *People v. Houston*, 118 Ill. 2d 194, 514 N.E.2d 989, 113 Ill. Dec. 77 (1987), stated that the *Housby* test only applies in jury cases, and it notes that the case at bar was a bench trial. This court finds that, [HN4] regardless of the nature of the trier of fact (whether judge or jury), it is improper to presume that a defendant

committed burglary merely because he was in possession of stolen property taken from a burglary. See *County Court v. Allen,* 442 U.S. 140, 156, 60 L. Ed. 2d 777, 791, 99 S. Ct. 2213, 2224 (1979) (a presumption "must not undermine the factfinder's responsibility at trial, based on **[**18]** evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt").

*Housby* dealt with the formulation of a three-part test for determining whether an instruction, which advised the jury in a burglary case that the defendant's guilt could be inferred from his exclusive and unexplained possession of recently stolen property, violated the <u>due process clause of the United States Constitution.</u> However, the same (or a similar) test can be used by any fact finder to determine the ultimate facts beyond a reasonable doubt. Regardless of which test or rationale a trial court uses to determine guilt or innocence, it must consist of more than the exclusive possession of the property in close proximity to the burglary. See *Housby,* 84 Ill. 2d at 423.

The question here is not whether defendant has been deprived **[*271]** of due process, but simply whether the evidence was sufficient to prove defendant guilty of burglary beyond a reasonable doubt. *See People v. Richardson,* 104 Ill. 2d 8, 13, 470 N.E.2d 1024, 83 Ill. Dec. 604 (1984). *If evidence, or lack there of was not sufficient to prove guilt beyond a reasonable doubt and defendant was convicted anyway, it violates Due Process* The record shows that the evidence was insufficient to establish defendant's guilt beyond a reasonable doubt. <u>The only evidence the trial court could rationally</u> **[**19]** <u>consider in its decision-making process was the exclusive possession of items of minimal value that were taken in the burglary and were found in close proximity to the offense.</u> As previously indicated, such evidence, standing alone, cannot support a guilty verdict of burglary beyond a reasonable doubt. See *Housby,* 84 Ill. 2d at 423. Accordingly, we reverse defendant's conviction and sentence for residential burglary.

Defendant next contends that the extraction of his blood and perpetual storing of his DNA profile pursuant to <u>section 5-4-3</u> of the Code violates his <u>fourth amendment</u> right to be free from unreasonable searches and seizures. **HN5** Under <u>section 5-4-3,</u> a person who is convicted of "any offense classified as a felony under Illinois law" (730 ILCS 5/5-4-3(a-5) (West 2002)) is required to submit blood specimens to the Illinois Department of State Police for genetic analysis.

Because we reverse defendant's conviction, we also reverse the circuit court's order requiring defendant to submit blood specimens for genetic analysis pursuant to <u>section 5-4-3.</u> *People v. Orta,* 361 Ill. App. 3d 342, 352, 836 N.E.2d 811, 297 Ill. Dec. 80 (2005).

Reversed.

CAHILL and J. GORDON, JJ., concur. **[**20]**

*This Decision was reviewed by the Illinois Appeals Court and upheld by the Illinois Supreme Court. Nov. 20, 2006 and March 2007, but the Appeals Court did not reverse Mr. Hills conviction stating that unexplained possession of stolen property & close proximity to the burglary is sufficient for a finding & Guilty beyond a reasonable doubt. Standing alone!! That is all that the State presented at trial.*

Service: **Get by LEXSEE®**
Citation: **368 Ill.app.3d 262**
View: **Full**
Date/Time: Friday, April 20, 2007 - 11:05 AM EDT

* Signal Legend:

⬤ - Warning: Negative treatment is indicated

▥ - Questioned: Validity questioned by citing refs

⚠ - Caution: Possible negative treatment

◆ - Positive treatment is indicated

🅐 - Citing Refs. With Analysis Available

3A

```
 1              (Whereupon, the document was

 2              tendered.)

 3         MR. ROSENTHAL:  I can tell you this,

 4    Judge --

 5         MS. MURTAUGH:  They're all sealed.  I

 6    didn't --

 7         MR. ROSENTHAL:  There's one police report

 8    in particular that, at least at the outset, that I

 9    would be seeking and that's the police report

10    relating to the case he was arrested on.  The case

11    he was arrested on he's not charged with.

12    However, he was charged with the case before your

13    Honor.

14         THE COURT:  That report I don't have any

15    question about.  Any police reports in regards to

16    his arrest --

17         MS. MURTAUGH:  Right, I would -- I would

18    agree with you.  I would agree with the Court.  He

19    can have that.  He's entitled to that.

20         THE COURT:  They should be tendered.

21         MR. ROSENTHAL:  What I would ask at the

22    very least then, Judge, if I can at least have the

23    case that he was arrested for, which is not the

24    pending case but the one --
```

3B

1    THE COURT:  No, you are entitled to have

2  the reports of his arrest because it may go to

3  some motion that you have.  → Motion to Suppress. "Crash"?

4    MR. ROSENTHAL:  Absolutely.  Again he speaks of a motion.

5    THE COURT:  Certainly it's relevant to

6  your case.  That should be turned over.  There's

7  no question about that.  The other cases --

8    MR. ROSENTHAL:  At the very lease I would

9  ask for an in camera inspection --

10    THE COURT:  I will do that.

11    MR. ROSENTHAL:  -- as to the other cases.

12    THE COURT:  I will look at the other

13  cases and see if I believe they have any relevance

14  to your particular case before the Court, but the

15  other case as to his arrest, that --

16    MR. ROSENTHAL:  Let me just make sure

17  I've got the case number because we might have it

18  in here.

19    THE COURT:  You tell me what it is.

20    MR. ROSENTHAL:  The case number that he

21  was arrested on is 04-23811. Amended for 04-23812

22    THE COURT:  I got it.  Do you have any

23  objection to tendering these?  These are case

24  No. 02 -- 04-23811.
         04-23812

3C

1          MS. MURTAUGH:  That's the case he was

2     arrested on.

3          THE COURT:  Is that the case he was

4     arrested on?

5          MR. ROSENTHAL:  That's the case he was

6     arrested on.

7          THE COURT:  Do you want to look at

8     these?

9          MR. ROSENTHAL:  Judge, specifically what

10    I'm looking for on that case is I do have that

11    arrest report as well as a supplemental report,

12    but what I'm trying to find out if there's a

13    general case report.  It's possible that it does

14    exist.

15         THE COURT:  There isn't.  Did you get the

16    property inventory report from that case from --

17    that must be the arrest.

18         MR. ROSENTHAL:  I do have a property

19    inventory.  I have several, but I'm not sure if it

20    relates to --

21         THE COURT:  Because the report on that

22    number that you have just given me does not go to

23    his arrest.  It starts out by saying pursuant to

24    an arrest then an investigation as to other

D-7

30

1   matters were conducted.

2   　　　　MR. ROSENTHAL:  I can certainly call the

3   police department and find out --

4   　　　　THE COURT:  So there would be nothing --

5   and it would be just this particular case, this

6   one only, and all this goes into are

7   investigations as to other cases.  And there's

8   nothing in here that relates, that I can see --

9   what's -- where was this burglary allegedly

10  occurred?  I'll see if anything --

11  　　　　MR. ROSENTHAL:  6217 South Claremont.

12  　　　　THE COURT:  Hold on.  6217 --

13  　　　　THE DEFENDANT:  That's my address.

14  　　　　MR. GIRALAMO:  437.

15  　　　　MR. ROSENTHAL:  North Haber Court.

16  　　　　THE COURT:  Haber?

17  　　　　MR. ROSENTHAL:  Yes.

18  　　　　MR. GIRALAMO:  H-a-b-e-r, with an

19  incident date of October 30th, 2004.

20  　　　　THE COURT:  What was the date?

21  　　　　MR. GIRALAMO:  October 30th, 2004.

22  　　　　THE COURT:  At Haber Court.

23  　　　　MR. GIRALAMO:  Yes.  The date of arrest,

24  too, Judge, was November 3rd.

BE 3E

```
1              THE COURT:  Just one second.

2                    What was the name of the place of

3    the burglary?

4              MR. GIRALAMO:  It was a residential home.

5              THE COURT:  I see.

6              MR. ROSENTHAL:  Judge, the difficulty I

7    have is I do anticipate filing a motion to quash

8    arrest and suppress evidence.  It's very hard for

9    me to try and piecemeal, try and burglar what

10   transpired in this case if I only have parts of

11   case reports.

12             THE COURT:  I agree with you and I just

13   looked at these reports from the case number that

14   you gave me and they indicate an investigation

15   would have been done but not necessarily relating

16   to this particular case.

17             MR. ROSENTHAL:  Certainly if he was

18   arrested legally on that case --

19             THE COURT:  See, what I'm saying is the

20   reports that I'm given do not go to his arrest.

21   They go to what occurred after he was placed under

22   arrest.  They don't have -- I mean the victim's

23   name -- the address is what on this?

24             MR. GIRALAMO:  437 North Haber,
```

D-9

3F

1    H-a-b-e-r, Court.

2         MR. ROSENTHAL:  And I believe Robert Bily

3    and Kathleen Bily are the names.

4         THE COURT:  And this arrest was 3,

5    November, right?

6         MR. GIRALAMO:  Yes,

7         THE COURT:  And his arrest was somewhere

8    around 17 McCarthy Avenue in Northlake.

9         MR. GIRALAMO:  The address of the arrest

10   listed on the arrest report is 1000 North Wolf

11   Road, Northlake, public street.

12        THE COURT:  This is a supplemental report

13   to the address.  It does not deal with the actual

14   arrest.  The supplemental report goes into an

15   investigation that was done in other matters

16   including -- well, there were investigations that

17   regarded talking to pawn shops.

18        MR. ROSENTHAL:  Which could include the

19   case that he is currently charged with.

20        THE COURT:  Take him back.

21             (Whereupon, the case was passed and

22             recalled.)

23        THE CLERK:  People versus Walter Hill.

24        THE COURT:  I have gone through all the

3G

1   subpoenaed records.  There were two sets of

2   subpoenaed records before the Court.  One includes

3   photographs and the other significant amounts of

4   police reports.

5             I have subsequently reviewed all the

6   other police reports that have been subpoenaed and

7   brought to the attention of the Court.  They are

8   all separate investigations that in no way, shape

9   or form involve this particular case.  There's

10  nothing in these reports that relate to the case

11  before this Court.

12            Therefore, those -- the subpoenas on

13  those particular files is stricken.  The other

14  ones are turned over.  And the one where he said

15  was on the date of his arrest, I've reviewed that

16  also.  And although it's on the date of his

17  arrest, those particular reports are supplemental

18  reports to the investigation regarding these other

19  cases and not to the case before the Court.  So

20  those subpoenas are stricken.  Thank you.

21            MR. GIRALAMO:  Judge, we'll tender those

22  to the police department.

23            THE COURT:  I'll give them all back to

24  you.  I gave you the two.

# PROOF OF SERVICE

I, Walter L. Hill B58710 pro se, swear under penalty of purjury. That I served a copy of the attached document on the STATE OF ILLINOIS ATTORNEY by placing this legal document in the mail at the Pinckneyville Correctional Center on this 31 day of August 2008.

(s) Walter L. Hill
B58710
Walter L. Hill
Pro se
Box 999
Pinckneyville, Illinois
62274-3910

Notary Public

Sworn before me Tracy L. Maue

on this 4th day of August 2008

OFFICIAL SEAL
TRACY L MAUE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/08/11